Bernard Ryan, P. J.
Nanuet is an unincorporated community in the Town of Clarkstown, Rockland County. (Legislative Manual 1958, p. 979.) State Highway 304 is its Main Street. Orchard Street leads uphill and off of Main Street to the east. From May, 1956 to November, 1957, approximately, Harry Wicks and his wife Amelia, the claimants hereinabove named, with their children, dwelled in a home up the hill and on the north side of Orchard Street. In 1956 the pavement of Route *354 304 at this location was concrete. Adjoining it were a curb and a sidewalk. Set in the curb and in the margin of the pavement was a catch basin made of cast iron. An iron grill covered the receptacle. The face of the vertical section of cast iron, which was contiguous with the face of the curb blocks on either side of it, was cut out and formed an arched opening.
The street corner was established as a bus stop. Harry Wicks was a bus driver. He frequently stopped his bus at the curb to discharge and receive passengers. Amelia Wicks frequently walked down the hill into the hamlet to do her marketing or to call on neighbors. Both were aware that from time to time there would be an accumulation of pebbles, rocks and debris at the catch basin. When it rained such materials would come down the hill. Harry Wicks had seen State highway employees come there and take out debris.
On August 2, 1956 Amelia Wicks left her home for an errand at a fruit store in the hamlet. Returning at about 3:30 p.m. from the west side of the highway she saw the 1 ‘ rocks and twigs and stuff ’ ’. She ‘ ‘ thought she saw a clear path ’ ’ and proceeded to step up onto the sidewalk. In doing so she stepped upon a flat piece of cardboard “ like a big box that canned goods would come in when it is opened up ”. The cardboard slid with her and her heel went down in the grate. Her shoe caught and she could not move until help came. She sustained painful injuries including a fracture of bones in the right foot and, because of complications, was hospitalized for 35 days and was disabled for a longer period. Her husband incurred medical and hospital expenses amounting to $531.
There is no direct proof that it was the responsibility of the State of New York, and its employees, to clean out and maintain the gutter and catch basin but such duty may be inferred from the testimony of Harry Wicks that he had seen highway employees performing that act. The Attorney-General called no witnesses and offered nothing to rebut such inference. However, there is an absence of proof that the State of New York, its officers and employees, had notice, actual or constructive, that the drain was defective or that there was an accumulation of material at its location on August 2, 1956. It has not been demonstrated that the State’s obligation of reasonable care, if it had that obligation with respect to this particular detail of highway maintenance, has been disregarded. On the other hand we are constrained to make a finding that the claimant Amelia Wicks did not act reasonably and prudently when she attempted to pick her way through the accumulation of debris which was in full view before her and which, from past obser *355 vation, she knew or should have known concealed, wholly or partially, the opening in the catch basin. She was under no compulsion to walk where she did. It cannot be said that she was free from contributory negligence.
Upon the foregoing recital of facts the claims of the injured person and of her husband must be dismissed and judgment entered accordingly.